FILED
2014 Dec-04  PM 02:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| DAVID S. WHITESIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 6:13-cv-1739-LSC |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, David S. Whiteside, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Whiteside timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Whiteside was forty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education and finished three years of college. (Tr. at 29.) His past work experiences include employment as an

insurance salesman, a mobile home salesman, and a professional baseball player. (Tr. at 29-31.) Mr. Whiteside claims that he became disabled on January 5, 2008, due to back pain, resulting from impairments to his lumbar and spine and from thoracic radiculitis, and due to anxiety and situational depression. (Tr. at 13, 28.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity. *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is engaged in substantial gainful activity, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step.  *See id.* §§ 404.1520(e), 416.920(e).  The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work.  *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the plaintiff's impairment or

combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.; see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Whiteside met the insured status requirements of the Social Security Act through her date of decision. (Tr. at 12.) She further determined that Mr. Whiteside had not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's post lumbar fusion is considered a "severe" impairment based on the requirements set forth in the regulations. (Tr. at 12-13.) In addition, she found that Mr. Whiteside's anxiety and situational depression were "nonsevere" because they did "not cause more than minimal limitations in [his] ability to perform[.]" (Tr. at 13.) The ALJ then found that the "severe" post lumbar fusion neither meets nor medically

equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14.) The ALJ did not find Mr. Whiteside's representations to be totally credible, and she determined that he has the RFC to perform light work, except that he can only occasionally climb, crouch, crawl, stoop, and kneel, and he requires an option to sit or stand at will. (Tr. at 15.)

According to the ALJ, Mr. Whiteside is able to perform some of his past relevant work as an insurance salesman and as a mobile home salesman. (Tr. at 19.) She determined he is unable to perform his past relevant work as a baseball player since that work requires the ability to perform at a medium exertional level. (*Id.*) However, since his RFC to perform light work activity does not disturb his ability to perform his past relevant work as an insurance or mobile home salesman, he retains the capacity to do that work both as he actually performed it, and as it is generally performed in the national economy. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 5, 2008, through the date of this decision[.]" (Tr. at 20.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). " The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' " *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520,

1529 (11th Cir. 1990)).

However, no decision is automatic, for " despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Mr. Whiteside alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he believes the ALJ failed to assign enough credibility to his testimony about his pain and was therefore inconsistent with Eleventh Circuit precedent. (Doc. 10 at 3.) Second, Plaintiff contends that the ALJ did not satisfy her duty to fully develop the record. (Id. at 9-10, 12.)

A.      The ALJ's Determination that Mr. Whiteside's Testimony Was Not Credible

Plaintiff argues that the ALJ failed to properly evaluate the credibility of his testimony of his disabling symptoms in a manner consistent with the standards of the Eleventh Circuit. (*Id.* at 3). Specifically, Mr. Whiteside alleges that " [t]he ALJ articulates several reasons for refusing to credit the Plaintiff's testimony of disabling

back pain, none of which are supported by substantial evidence." (*Id.* at 7.) He contends that the ALJ's opinion is not supported by substantial evidence because she failed to attribute proper weight to certain facts in the record. (*Id.* at 7-11.)

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, the claimant must produce " (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) (" [T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record

in reaching a conclusion about the credibility of the individual's statements."). In making a credibility determination, an ALJ may consider the opinions of treating physicians and consultative examiners, as well as those of other medical doctors. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision [regarding credibility], so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered h[is] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (internal quotations omitted).

Mr. Whiteside testified that he experienced severe back pain that rendered him incapable of sitting for longer than 30-45 minutes at a time, unable to walk for longer than 15-20 minutes at a time, and that he could not even hoist a gallon of milk. (Tr. at 28-29, 32-33.) He testified that he experienced back spasms, a burning sensation in his right leg, and pain in his hip when walking. (Tr. at 32.) He further testified that he has to lie down sometimes during the day, and that his medication caused him to become lethargic. (Tr. at 33, 35.) He also complained of difficulty going up and down stairs, as well as a general worsening of his symptoms when the weather is cold. (Tr. at 34, 36.)

In this case, the ALJ found that Mr. Whiteside met the first prong of the

Eleventh Circuit's pain standard, but she did not believe that he had put forth objective medical evidence that could confirm the severity of the alleged pain arising from that condition or that any impairment of such severity could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. at 16.)

Substantial evidence supports the ALJ's decision.  The ALJ made note of Mr. Whiteside's allegations of pain in his hip and down his leg and his alleged inability to sit or stand for longer than half an hour at a time. (Tr. at 15-16.) She also noted his representation that he had undergone diagnostic testing with a Dr. Longmire two years prior to the hearing. (*Id.*) However, she discovered that, in contrast to his testimony, Mr. Whiteside had deferred the diagnostic testing that Dr. Longmire had recommended. (*Id.; see generally*, tr. at 251-260.) As a result of not having undergone diagnostic testing, the ALJ found that Mr. Whiteside had not produced "objective clinical or diagnostic testing of record to support his alleged pain and limitation." (Tr. at 16.) The ALJ also noted that Mr. Whiteside's chiropractor had determined in December 2010 that while his "symptoms prevent[ed] him from playing baseball[,]" that that conclusion did not support his alleged inability to lift more than a loaf of bread. (Tr. at 17.) To the contrary, as noted by the ALJ, the consultative examiner, Dr.

Boyde J. Harrison, had determined on March 22, 2011, that Mr. Whiteside "walked with a normal gait and was able to squat and []rise without difficulty" and that he felt that the plaintiff "should be able to perform his insurance salesman activities." (Tr. at 18.) *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (providing that an ALJ considers medical opinions when assessing credibility).

Further, there was substantial evidence supporting a finding that while Mr. Whiteside experienced some symptoms, he did not experience them to the limiting extent that the claimed. For example, after he re-injured his back after a fall in August 2006, a physician observed that Mr. Whiteside had normal strength, intact soft touch, and fluid gait with "good" heel and toe walking bilaterally "with encouragement." (Tr. at 223.) A CT scan from September 2006 showed mild degenerative changes at L3-4, a variety of changes at L4-5, and post operative scarring at L5-S1. (Tr. at 220-22.) In October 2006, a physician reviewed the September scan and found that flexion and extension films did not show abnormal motion. (Tr. at 217, 222.) A new MRI taken in February of 2007 confirmed degenerative changes at L4-5 and L5-S1. (Tr. at 260.) The same month, a specialist found no significant swelling or deformity of the thoracolumbar spine and that Mr. Whiteside had a full range of motion in all planes. (Tr. 237-38.) The specialist also found that he had some pain upon moving,

but that he had 5/5 strength, normal tone, as well as intact reflexes and sensation in his lower extremities. (Tr. at 238.) Mr. Whiteside received an epidural injection the same month and reported a 30% reduction in his pain for two weeks. (Tr. at 229.) In April of 2009, Mr. Whiteside's treating physician noted that he walked with a normal gait and strength and without tenderness to palpation. (Tr. at 289.) Notes from his treatment over 2010 documented occasional complaints of pain with otherwise normal objective findings. (Tr. at 259, 264, and 280.)

The foregoing establishes that the ALJ's determination that Mr. Whiteside's testimony was not credible did not amount to a broad rejection of that evidence. She recognized that Mr. Whiteside had failed to produce objective medical evidence confirming the severity of his pain. She noted a glaring inconsistency between his testimony, that he had undergone diagnostic testing, and his treatment record, which showed that he had never undergone diagnostic testing. (Tr. at 251-60.) She also cited to evidence supporting the conclusion that his underlying medical condition caused some limiting symptoms, but none to the level of severity that he testified to. Among that evidence is the consistent opinion of different physicians and specialists who recorded complaints of pain and simultaneously documented normal objective findings. In fact, she pointed out, " the record does not contain any opinions from

treating or examining physicians indicating that the claimant is disabled or has limitations" beyond not being able to play professional baseball. (Tr. at 18.)  In sum, the ALJ articulated adequate reasons for her finding that his testimony was not credible and that it did not meet the Eleventh Circuit's pain standard.

> B.     The ALJ's Duty to Fully Develop the Record

Mr. Whiteside alleges that the ALJ failed to fully develop the record by not obtaining diagnostic testing results. (Doc. 10 at 9-10.) The ALJ " has a basic obligation to develop a full and fair record." *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988) (internal citations and quotations omitted). This basic duty requires that the ALJ make specific findings of fact to support her conclusions of law regarding the plaintiff's disability status. *Id.* at 439-440 (holding that the ALJ had failed to fully develop the record where he made no specific factual findings supporting her conclusion that " there [were] a significant number of jobs in the national economy which [the plaintiff] could perform." ). This duty exists to ensure that the ALJ has " scrupulously and conscientiously probe[d] into, inquire[d] of, and explore[d] . . . all relevant facts." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)). It also enables the court on appeal " to determine whether the ultimate decision on the merits is rational and supported by substantial

evidence." *Welch*, 854 F.2d at 440 (internal citations and quotations omitted).

However, "[a]n ALJ is not required to seek the independent testimony of a medical expert where the record is sufficient to determine whether the claimant is disabled and additional medical expert testimony would be unnecessary." *Prince v. Comm'r*, 551 F. App'x 967 (11th Cir. 2014) (citing *Wilson*, 179 F.3d at 1278). Similarly, "[t]reating physicians should be re-contacted when the evidence from that physician is *insufficient* to determine whether the claimant is disabled." *Id.* (citing 20 C.F.R. § 404.1512) (emphasis added).

Additionally, notwithstanding the ALJ's well-established basic duty to develop a full and fair record, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see, e.g.*, 20 C.F.R. § 416.912(a) ("[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"). Not only is the ultimate evidentiary burden placed on Plaintiff, but Plaintiff must also make a "clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record." *Graham v. Apfel*, 129 F.2d 1420, 1422 (11th Cir. 1997). Therefore it

is up to Plaintiff to show that there was an evidentiary gap which resulted in prejudice. *See Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991).

Mr. Whiteside suggests that it was the ALJ's responsibility to obtain diagnostic testing results, and that she erred in discrediting his testimony on the basis of those results being absent from the record. (Doc. 10 at 9-10.) However, Plaintiff's failure to follow through with his physician's recommendation to undergo diagnostic testing and to introduce any objective medical evidence in support of his testimony does not mean that the ALJ failed to fully develop the record. In fact, the ALJ made an effort to elicit more evidence supporting his testimony about the severity of his pain by searching for the results of diagnostic testing that he claimed he had underwent. (Tr. at 16.) Only in fulfilling her duty to create a full and fair record did she begin searching for that objective medical evidence and discover that Mr. Whiteside had not yet undergone diagnostic testing. (*Id.*)  In other words, she sought to elicit evidence in support of the severity of Mr. Whiteside's pain symptoms and instead discovered evidence suggesting his testimony was not entirely credible.

Here, because the record contained sufficient evidence for the ALJ to make an informed decision concerning Plaintiff's capabilities, the ALJ was not obligated to order additional testing from Plaintiff's physician.  To the contrary, and as noted

above, the record included the opinions of several physicians and was sufficient for a decision.  Moreover, Plaintiff makes no "clear showing of prejudice" as is required when arguing that the record was inadequately developed.  *Graham*, 129 F.2d at 1422.  Without evidence that the ALJ's decision would have been different in the light of new information, the ALJ is not required to perform any further fact-finding.  *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).  In this case, Plaintiff offers no new information and makes no showing of prejudice warranting remand for further develop of the record.  Thus, the record was sufficiently developed in this case.

IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Whiteside's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 4<u>th</u> day of <u>December 2014</u>.

L. Scott Coogler
United States District Judge
[160704]